# EXHIBIT A

STATE OF MINNESOTA                              DISTRICT COURT

COUNTY OF HENNEPIN                              FOURTH JUDICIAL DISTRICT
                                                Case Type:  Civil - Employment

---

Lorenzo Tejeda,                                 Court File No.: _____

             Plaintiff,

vs.                                             **SUMMONS**

OS Restaurant Services, LLC,

             Defendant.

---

THIS SUMMONS IS DIRECTED TO DEFENDANT OS RESTAURANT SERVICES, LLC, AND ITS ATTORNEYS, Whitney M. Buescher, Esq., Thompson, Sizemore, Gonzalez & Hearing, P.A., One Tampa City Center, 201 N. Franklin Street, Suite 1600, Tampa, Florida 33607:

1. **YOU ARE BEING SUED.**  The Plaintiff has started a lawsuit against you.  The Plaintiff's Complaint against you is attached to this summons.  Do not throw these papers away.  They are official papers that affect your rights.  You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.**  You must give or mail to the person who signed this summons a **written response** called an Answer within 20 days of the date on which you received this Summons.  You must send a copy of your Answer to the person who signed this summons located at:

HALUNEN & ASSOCIATES
1650 IDS Center
80 South Eighth Street
Minneapolis, MN  55402
612-605-4098

3. **YOU MUST RESPOND TO EACH CLAIM.**  The Answer is your written response to the Plaintiff's Complaint.  In your Answer you must state whether you agree or disagree with each paragraph of the Complaint.  If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer with 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the complaint. If you do not want to context the claims stated in the complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: June 19, 2013                          HALUNEN & ASSOCIATES

Clayton Halunen, Atty. No. 219721
Ross D. Stadheim, Atty. No. 0392475
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099

*ATTORNEYS FOR PLAINTIFF*

STATE OF MINNESOTA                                    DISTRICT COURT

COUNTY OF HENNEPIN                          FOURTH JUDICIAL DISTRICT

---

Court File No.: _____

Lorenzo Tejeda,

      Plaintiff

      v.                                    **COMPLAINT AND JURY DEMAND**

OS Restaurant Services, LLC,

      Defendant.

---

Lorenzo Tejeda ("Plaintiff"), for his Complaint and Jury Demand against OS Restaurant Services, LLC, ("Defendant"), states and alleges as follows:

## PARTIES

1.    Plaintiff is a Hispanic male and resident of the City of Cottage Grove, County of Washington, State of Minnesota.

2.    Defendant is incorporated according to the laws of the state of Delaware with its headquarters in the City of Tampa, County of Hillsborough, State of Florida. Defendant conducts significant business within the State of Minnesota.

3.    At all times relevant to this lawsuit, Plaintiff and Defendant were "employee" and "employer," respectively, as those terms are defined in Minn. Stat. § 363A.03.

## JURISDICTION AND VENUE

4.    The jurisdiction of this Court is invoked as the violations occurred in the State of Minnesota and involve state law.

5.      Venue is appropriate because Defendant transacts a substantial amount of business in the State of Minnesota, and a substantial amount of the facts giving rise to this action occurred within the borders of this state.

## FACTS

6.      In 2000, Plaintiff began his employment with Defendant as a cook at its San Antonio, TX location.

7.      In January 2002, Plaintiff relocated to Minnesota and continued to work as a cook at the Bloomington, MN location.

8.      In August 2003, Plaintiff was promoted to kitchen manager at the Maplewood, MN location.  In the summer 2005, Plaintiff was again promoted to front house manager at the Maplewood, MN location.  In March 2009, Plaintiff was yet again promoted by Greg Michals, Joint Venture Partner, to partner of the Eau Claire, WI location.  In August 2009, the Eau Claire, WI location was closed because of struggling sales, a problem that existed prior to Plaintiff's arrival.

9.      After the Eau Claire, WI location closed, Michals offered Plaintiff a partnership at the Madison (Junction), WI location because its partner had recently been terminated.  Plaintiff accepted Michals' offer.  However, just two days after Plaintiff's acceptance, Michals took back his offer and told Plaintiff that he had already promised that location to Kelley Compton.  Michals apologized to Plaintiff and told him to be patient because he was going to make him a partner again soon.

10.     Plaintiff then moved back to Minnesota shortly after Michals gave the Madison (Junction), WI location to Compton.  Upon his arrival, Michals called Plaintiff and asked him to be the interim partner at the Coon Rapids, MN location.  Plaintiff

2

accepted.   Two weeks into the job, Plaintiff asked Michals if the partnership was permanent.  Michals told Plaintiff to stand by because he did not know yet.

11.     In September 2009, Defendant closed the Eden Prairie, MN location.  After informing Plaintiff of that location's closure, Michals expressed that he would be revoking Plaintiff's interim partnership at the Coon Rapids, MN location in order to give that location to the recently displaced Eden Prairie partner, Chris French.

12.     Plaintiff, unhappy that Michals had now offered and revoked two partnership opportunities, expressed his dissatisfaction that French was given priority.   Plaintiff explained that he should be given priority, as he lost his position upon the closure of the Eau Claire, WI location, had to give up the Madison (Junction), WI location to Compton, and now had to yield to French.  Michals agreed, but told Plaintiff that he needed to take care of French first.  Michals then reassured Plaintiff and promised, "the next store in the Twin Cities that opens up, besides Bloomington, is yours if you let me take care of Chris French first."

13.     Relieved, Plaintiff then sat down with Michals and went through numerous "what if" scenarios – all of which resulted in Plaintiff becoming a partner.  Michals then asked Plaintiff to voluntarily accept a pay cut from $60,000.00 to $45,000.00 to manage the front of the house at the Roseville, MN location because he was going to be a partner soon.  Solely in reliance upon Mr. Michals' promise that he would be awarded the next partnership in the area, Plaintiff agreed.  Additionally, based on this promise, Plaintiff moved to Inver Grove Heights, MN because of its central location, which meant that he could easily and immediately manage any location that became available in the Minneapolis – St. Paul metropolitan area.

3

14.    During the summer of 2010, Diane Kenney, a former partner in Minnesota and current JVP for Colorado, Wyoming, and South Dakota, visited the Roseville, MN location.  While in town, Kenney asked Plaintiff why he had not yet achieved partnership status.  Confidently, Plaintiff replied that Michals had promised him the next location in the Minneapolis – St. Paul metro.  Kenney then asked if Plaintiff was interested in moving to Colorado to be a partner there.  Plaintiff replied that he was extremely interested.  With Michals on a sabbatical at the time, Kenney stated that she needed to ask for his approval to "make sure everything is clear."  Plaintiff agreed, excited at the prospect of finally managing his own location.

15.    When Michals returned from sabbatical, he addressed Kenney's proposal with Plaintiff.  He asked Plaintiff why he was interested in moving to Colorado.  He replied, "because Colorado is a nice state and I'd finally be managing my own location."  Michals reiterated that he "had plans" for Plaintiff in Minneapolis – St. Paul and informed him that one of his partners was going to be terminated soon and that would be Plaintiff's opportunity.  Without naming names, Plaintiff knew that Michals was referring to Ed Weibl at the Woodbury, MN location.  Based upon Michals' representation that he would be awarded partnership at a Minneapolis – St. Paul metro location soon, Plaintiff decided not to pursue the Colorado partnership opportunity.  Additionally, Plaintiff passed on several email notifications across the U.S., which informed him of other partnership openings because of this representation.

16.    In May 2011, Plaintiff received an email notification that the partnership at the Rochester, MN location was available.  Soon after, Michals approached Plaintiff to make sure that he was not planning on applying for the position, again reiterating his

4

plans for Plaintiff in the Minneapolis – St. Paul metro. Michals also stated that he had already promised Rochester, MN to someone else. Plaintiff then reminded Michals of their arrangement and his patience, which he acknowledged. Based upon this and Michals' other repeated assurances, Plaintiff decided to move from Inver Grove Heights, MN to Cottage Grove, MN where he purchased a home.

17.     During the last week of September 2012, Michals asked Plaintiff if he would work as the front house manager at the Bloomington, MN location. Plaintiff rejected this opportunity because he was previously a front house manager for two years, knew the position well, and reiterated that he wanted to wait for the next partnership position to open. During this time, this position was held by Mike Burley.

18.     The next week, in early October 2012, a partnership position opened up in Coon Rapids, MN. Immediately, Plaintiff became suspicious. Plaintiff knew that Burley would be interviewing for the position and that Michals had previously promised Burley a partnership as well. Plaintiff suspected that Michals wanted to give the partnership to Burley and have him backfill Burley's position. Still, Plaintiff believed the interview was a mere formality based on Michals' previous promises.

19.     In October 2012, Plaintiff interviewed with Michals. After this interview, Plaintiff had a phone interview with Bob Irons, Joint Venture Partner – Illinois Area. This concerned Plaintiff because Michals was the sole decision maker and he had never heard of a partner going through a second interview. Regardless, given Plaintiff's experience, performance, Michals' promises, and Plaintiff's loyalty to the company, Plaintiff was confident he would be awarded the Coon Rapids, MN partnership.

20.     Following his interviews, Michals called Plaintiff and informed him that he did not get the job.  Shocked, Plaintiff stated, "Greg, you promised me.  We had a deal." Michals replied, "Lorenzo, you could have gone anywhere."  Dumbfounded, Plaintiff went through the entire scenario set forth above in detail.  Without any room for denial, Michals agreed he had promised Plaintiff a store in the Minneapolis – St. Paul metro area.  Michals' only explanation for why Plaintiff did not get the job was that he was "in the kitchen too long."

21.     Plaintiff pressed Michals for a better explanation because of his extensive experience in management and the fact that he managed the front of the Roseville, MN location restaurant from October 2009 to September 2011.  Michals did not provide an alternative explanation.  Michals was well aware of Plaintiff's relevant experience when he promised him partnership.  Michals ended the conversation with, "go ahead and quit, I don't care."

22.     Plaintiff is a Hispanic male.  Michals is a white male.  Michals gave the locations that he had promised to Plaintiff to less qualified, white employees.

23.     It is clear that Michals has a pattern and practice of making clear and definite promises to Plaintiff and others at Defendant.  In addition to promises made to him, Plaintiff is aware of the following:

- Michals promised Kelly Compton the Madison, WI (Junction) location and revoked his partnership offer to Plaintiff in order to facilitate Compton moving back to her hometown.
- Michals promised to take care of Chris French after he closed the Eden Prairie, MN location.  He then gave French the Coon Rapids, MN partnership in September 2009.
- Michals told Plaintiff not to apply for the Rochester, MN location because he had already promised that store to Christian Carranza.

6

- As he did with Plaintiff, Michals promised Mike Burley the next store in the Twin Cities area because he had helped Michals with store openings leading up to September 2009.
- Michals also promised Aaron Parr, the next store in the Twin Cities because he is trained as a food technician in or around September 2009 as well.

24.     As direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## CLAIMS

## COUNT ONE
## RACE DISCRIMINATION IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

25.     Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq.*  These practices include, but are not limited to: Defendant's failure to promote Plaintiff to the partnership position he was promised because of his race.

26.     Defendant failed to take all reasonable steps to prevent the discrimination based upon Plaintiff's race from occurring.

27.     Plaintiff's race was a motivating factor in Defendant's failure to promote him.

28.     The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting his status as an employee because of his race.

29.     The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to anti-discrimination laws, which protect Plaintiff.

30.     As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

**COUNT TWO**
**PROMISSORY ESTOPPEL**

Plaintiff realleges each and every paragraph of this Complaint.

31.     Defendant induced Plaintiff's reasonable reliance by promising Plaintiff, numerous times, that he would be the next partner in the Minneapolis – St. Paul area. This promise was clear and definite.

32.     Defendant never intended to give Plaintiff a partnership in the Minneapolis – St. Paul area.  Defendant knew and/or reasonably should have known that Plaintiff would rely on its representations.

33.     Plaintiff relied on Defendant's representations.  Defendant's conduct and representations caused Plaintiff's reliance, which was detrimental.  Plaintiff accepted a demotion and forwent other job and partnership opportunities in Minnesota and in other areas of the U.S. because of Defendant's representations.

34.     Justice requires that Defendant be required to fulfill its promise to Plaintiff because Plaintiff forwent these other opportunities and accepted a demotion in pay in

reliance of Defendant's promises and now cannot avail himself of that opportunity or a similar opportunity.

35.    As a direct and proximate result of Defendant's failure to fulfill its promise, Plaintiff has suffered, and continues to suffer emotional distress, humiliation, embarrassment, pain and suffering, loss of wages and benefits and other serious damages.

**COUNT THREE**
**VIOLATIONS OF MINN. STAT. § 181.64 FALSE STATEMENTS AS**
**INDUCEMENT TO ENTERING EMPLOYMENT**

Plaintiff realleges each and every paragraph of this Complaint.

36.    Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of Minn. Stat. § 181.64.  These practices include, but are not limited to: specifically and repeatedly assuring Plaintiff that he would be receiving the next Minneapolis – St. Paul area partnership, which caused Plaintiff to move to a central metro area location, Inver Grove Heights, MN and, after Defendant reiterated its promise, Plaintiff moved from Inver Grove Heights, MN to Cottage Grove, MN where he purchased a house.

37.    Defendant falsely represented that Plaintiff would become a partner, which induced him to move to Minnesota and change locations within the state, in violation of Minn. Stat. § 181.64.

38.    Plaintiff sustained damages in consequence of the false and deceptive representations concerning his potential partnership.

39.    Plaintiff would not have moved places but for these fraudulent inducements.

40.    The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to the laws that protect Plaintiff.

41.    As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT FOUR
## FRAUDLENT INDUCEMENT

Plaintiff realleges each and every paragraph of this complaint.

42.    Defendant fraudulently induced Plaintiff to continue his employment in his latest position with Defendant in the Minneapolis – St. Paul metro area, which caused him to forgo other more lucrative opportunities by promising Plaintiff, numerous times, that he would be receiving the next available partnership.

43.    Defendant's representations to Plaintiff that he would receive the next partnership in the Minneapolis – St. Paul metro area were false.  Defendant knew these representations were false at the time the representations were made or asserted they were true without knowing that its representations were true or false.

44.    Defendant made these representations to Plaintiff in order to induce Plaintiff to remain in the employ of Defendant and to induce him to reject other opportunities.

45.    Plaintiff relied upon the representations and promises of Defendant.  He even accepted a lower salary and demotion with the expectation that he would be rewarded with the next available partnership because of his commitment to Defendant.  Defendant

intended that the representations be acted and relied upon by Plaintiff, and Plaintiff acted

in the manner reasonably contemplated by Defendant.

46.     At the time the representations were made by Defendant, Plaintiff was

ignorant of the falsity of the representations, and Plaintiff had a right to rely on them.

47.     Defendant never granted Plaintiff the promised position, which would have

resulted in a higher salary.  In fact, Plaintiff accepted a demotion based on Defendant's

representations that he would be receiving the next available partnership position.  As a

result, Plaintiff was damaged.

48.     As a direct and proximate result of Defendant's illegal conduct, Plaintiff has

suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain

and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and

has incurred attorneys' fees and expenses and other serious damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays:

a.      That the practices of Defendant complained of herein be adjudged, decreed,

and declared violations of the rights secured to Plaintiff by the Minnesota Human Rights

Act and state law.

b.      That Defendant be required to make Plaintiff whole for its adverse,

discriminatory and retaliatory actions through restitution in the form of back pay, with

interest of an appropriate inflation factor.

c.      That Plaintiff be awarded front pay and monetary value of any employment

benefits he would have been entitled to in his position with Defendant.

d.      That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

e.      That Plaintiff be awarded compensatory damages in an amount to be established at trial.

f.      That Plaintiff be awarded punitive damages, as permitted by statute.

g.      That Plaintiff be awarded treble damages as permitted by statute.

h.      That the Court award Plaintiff his attorneys' fees, costs, and disbursements pursuant to state law.

i.      That the Court grant such other and further relief as it deems fair and equitable.


PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS


June __19__, 2013                          HALUNEN & ASSOCIATES


                                           _____
                                           Clayton D. Halunen, # 219721
                                           Ross D. Stadheim, # 0392475
                                           1650 IDS Center
                                           80 South Eighth Street
                                           Minneapolis, MN 55402
                                           Telephone:  612.605.4098
                                           Facsimile:  612.605.4099

                                           *ATTORNEYS FOR PLAINTIFF*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.21 to the party against whom the allegations in this pleading are asserted.

June 19, 2013

Ross D. Stadheim, # 0392475