UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Lorenzo Tejeda,

Plaintiff,

vs.

OS Restaurant Services, LLC,

Defendant.

Court File No.: 13-cv-01966 (SRN/FLN)

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

---

## INTRODUCTION

The central issues of Defendant's motion are: (1) whether Plaintiff's promissory estoppel claim is barred by the exclusivity provisions of the Minnesota Human Rights Act ("MHRA"); and (2) whether this claim, in addition to Plaintiffs' race discrimination and fraudulent inducement claims, are barred by their applicable statutes of limitations.

First, Minnesota case law expressly rejects the very argument that Defendant asserts, namely that the MHRA preempts all claims arising from facts supporting an MHRA violation. *See Vaughn v. Northwest Airlines, Inc.*, 558 N.W. 2d 736, 745 (Minn. 1997). Even accepting Defendant's argument as true, Plaintiff's promissory estoppel and MHRA claims arise from different facts that resulted in distinct injuries. *Id.* at 767 (noting that the preemption question turns on whether Defendant's common law and statutory duties toward Plaintiff are the same.); *See also Hoover v. Norwest Mortgage Banking*, 605 N.W.2d 757, 767 (Minn. Ct. App. 2000). For his race discrimination claim,

Plaintiff asserts that his race was a motivating factor in Defendant's failure to promote him. Defendant's discrimination injured Plaintiff by depriving him of equal employment opportunities, affecting his status as an employee, and diminishing his future earning potential. The MHRA imposes a duty on Defendant to take all reasonable steps to prevent discrimination against Plaintiff based on his race. Promissory estoppel imposes an altogether different duty. In reliance on Defendant's promises of promotion to partnership in the Minneapolis – St. Paul metro area, Plaintiff turned down job opportunities and accepted temporary demotion within the company to his injury. Defendant is required to fulfill the promises upon which Plaintiff detrimentally relied.

Second, the law in this Circuit is clear that where the Plaintiff alleges that his claims arise out of a pattern of discrimination, the Defendant's conduct will be viewed as a continuing violation of the MHRA rather than separate claims for a number of discrete acts or unlawful practices by Defendant. As a result, the statute of limitations did not begin to run until Defendant expressly denied Plaintiff's promotion in October 2012, which prompted Plaintiff to assert his rights. For the foregoing reasons and those that follow, Defendant's motion should be denied in its entirety.

**STATEMENT OF THE FACTS**

Plaintiff Lorenzo Tejeda is a Hispanic male with a strong history of positive performance with Defendant, OS Restaurant Services, LLC – "Outback Steakhouse." During his thirteen years of employment with Defendant, Plaintiff was awarded multiple

promotions within the company. (Compl. ¶¶6-8.[1]) After starting in August 2000, Plaintiff was first promoted from cook to kitchen manager in 2003. (Compl. ¶8.) Then, in summer 2005, Plaintiff was promoted to front house manager. (*Id.*) Finally, in March 2009, Plaintiff was yet again promoted, this time to Joint Venture Partner ("partner") of the Eau Claire, WI location, meaning that he ran that location and shared in its profits. (*Id.*)

Then, in August 2009, five months after his promotion to partner, the Eau Claire location was closed due to struggling sales, a problem that existed prior to Plaintiff's arrival. (*Id.*) After this location's closure, Plaintiff was offered a partnership at the Madison (Junction), WI location by Greg Michals, his regions' supervisor. (Compl. ¶9.) However, just two days after Plaintiff's acceptance, Michals took back the offer telling Plaintiff that he had already promised the store to Kelley Compton. (*Id.*) Michals apologized to Plaintiff and told him to be patient because he was going to make him a partner again soon. (*Id.*) This was the first of many hollow promises that Michals made to Plaintiff and upon which Plaintiff detrimentally relied.

In the meanwhile, Plaintiff worked as an interim partner at Defendant's Coon Rapids, MN location. (Compl. ¶10.) Despite Plaintiff's stellar interim performance, Michals revoked Plaintiff's interim partnership at that location and gave that location to Chris French, a partner who was recently displaced from the Eden Prairie, MN closure in September 2009. (Compl. ¶11.) Unhappy that Michals had now revoked two partnership

[1] For the Court's convenience, Plaintiff's Complaint and Jury Demand is attached to the Declaration of Ross D. Stadheim as Exh. 1.

opportunities from him, Plaintiff expressed dissatisfaction to Michals that French was given priority. (Compl. ¶12.) Plaintiff explained to Michals that he should have been given priority over French because he was displaced first and subsequently had to give up the Madison location to Compton. (*Id.*) Michals agreed, but gave no explanation except that he had to take care of French first. (*Id.*) Michals then reassured Plaintiff and explicitly promised him that, "the next store in the Twin Cities that opens up, besides Bloomington, is yours if you let me take care of Chris French first." (*Id.*)

Based on this representation, Plaintiff went through various "what if" scenarios with Michals all of which resulted in Plaintiff becoming partner. (Compl. ¶13.) Michals then asked Plaintiff to manage the front of the house in Roseville, MN until a partnership opened up. (*Id.*) Solely in reliance upon Michals' promise that he would soon become a partner again in the area, Plaintiff agreed to accept this new position which resulted in a pay cut from $60,000 to $45,000. (*Id.*) Furthermore, based on this promise, Plaintiff also moved to Inver Grove Heights, MN because of its central location in preparation for employment as a partner in the Minneapolis – St. Paul metro area. (*Id.*)

During the summer of 2010, Plaintiff was approached with a partnership opportunity in Colorado by Diane Kenney, a manager on Michals' level in the West. (Compl. ¶14.)[2] Interested in the prospect of moving to Colorado and finally managing his own location, Plaintiff expressed interest to Kenney who brought the opportunity to Michals. (Compl. ¶15.) In response, Michals reiterated that he "had plans" for Plaintiff in

[2] Shortly before this inquiry, Defendant entered into a nationwide Consent Decree with the EEOC. *See* Def. 4/19/13 Letter to Pl (See Exh. 2 attached to the Declaration of Ross D. Stadheim.). Without the benefit of discovery, it is unclear why Defendant was forced to enter into this Decree.

Minneapolis – St. Paul and informed him that a partner would be terminated soon, which would be Plaintiff's opportunity. (*Id.*) Based on Michals' representations, Plaintiff decided not to pursue the Colorado opportunity and also passed on several e-mail notifications across the U.S. informing him of other partnership openings. (*Id.*)

In May 2011, Plaintiff received an e-mail notification that a partnership opportunity was available in Rochester, MN. (Compl. ¶16.) Unprompted, Michals approached Plaintiff soon after the e-mail notification went out to make sure that he was not planning on applying for the position, reiterating that he had plans for Plaintiff in Minneapolis – St. Paul. (*Id.*) Plaintiff reminded Michals of their arrangement and his patience which Michals acknowledged. (*Id.*) Based on Michals' repeated assurances, Plaintiff moved from Inver Grove Heights, MN to Cottage Grove, MN where he laid down roots and purchased a home. (*Id.*)

During the last week of September 2012, Michals asked Plaintiff to move positions to the front house manager at the Bloomington, MN location. (Compl. ¶17.) Plaintiff rejected this opportunity, notifying Michals that he wanted to wait for the next partnership to open. (*Id.*) The following week in early October 2012, a partnership opened in Coon Rapids, MN. (Compl. ¶18.) Plaintiff discovered that Michals wanted him to backfill the front house manager position in Bloomington because he wanted to promote Mike Burley to the open partnership. (*Id.*) Despite knowing that Burley was interviewing for the partnership and that Michals already attempted to get him to backfill Burley's old job, Plaintiff continued to believe that the interview was a mere formality based on Michals' previous promises. (*Id.*)

In October 2012, Plaintiff interviewed with Michals. (Compl. ¶19.) After this interview, Plaintiff had a second interview with Bob Irons, Joint Venture Partner – Illinois Area. (*Id.*) This concerned Plaintiff because Irons was not familiar with Minnesota, Michals was the sole decision maker, and he had never heard of a partner going through a second interview. Regardless, Plaintiff's interviews went off without a hitch and based on Michals' promises and Plaintiff's own experience, performance, and loyalty to the company, Plaintiff was confident that he would be awarded the Coon Rapids partnership. (*Id.*) Following the interviews, Michals called Plaintiff and informed him that he did not get the job. (Compl. ¶20.)

Shocked at the news, Plaintiff stated, "Greg, you promised me. We had a deal." In response Michals simply stated, "Lorenzo, you could have gone anywhere." (*Id.*) Dumbfounded, Plaintiff went through the entire scenario set forth above in detail with Michals. (*Id.*) Without any room for denial, Michals agreed that he had promised Plaintiff a store in the Minneapolis – St. Paul metro area. (*Id.*) Michals' only explanation for why Plaintiff did not get the job was that he was "in the kitchen too long." (*Id.*) Plaintiff then pressed Michals for a better explanation because of his extensive experience in management and the fact that he had managed the front of the Roseville, MN location from October 2009 to September 2011. (Compl. ¶21.) Michals, who was fully aware of Plaintiff's relevant experience when he promised him partnership, did not provide a better explanation. (*Id.*) Instead Michals ended the conversation with, "go ahead and quit, I don't care." (*Id.*) Tellingly, every one of the employees who was given priority over Plaintiff by Michals in the Minneapolis – St. Paul metro area was white. (Compl. ¶22.)

After serving his Complaint on Defendant on July 19, 2013, Defendant offered Plaintiff the Woodbury, MN partnership in August 2013. At the time his response was drafted, Plaintiff was in the process of negotiating the terms of his employment contract.

## ARGUMENT

### I. Standard of Review

Defendant moves this Court to dismiss a portion of Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. A Rule 12(b)(6) motion "test[s] the formal sufficiency of the statement of the claim for relief." *See* 5B Wright & Miller, *Federal Practice and Procedure* § 1356 (3d ed. 2004). It is "not a procedure for resolving a conflict between the parties about the facts or the substantive merits of the plaintiff's case." *Id*. As the United States Supreme Court stated in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), an adequately pled complaint "will not be dismissed based on the District Court's assessment that the plaintiff will fail to find evidentiary support for his allegation or prove his claim to the satisfaction of the fact-finder." *Id.* at 563 n.8. A plaintiff must simply plead facts "to raise a reasonable expectation that discovery will reveal evidence of [the claim]." *Id*. at 556. Moreover, a Plaintiff's facts are to be construed in a light most favorable to him. *Doe v. Cassel*, 403 F.3d 986, 987 (8th Cir. 2005) (*citing Midwestern Mach., Inc. v. Northwest Airlines, Inc*., 167 F.3d 439, 441 (8th Cir. 1999)).

Rule 12 motions to dismiss should only be granted when is appears beyond a doubt that Plaintiff can prove no sets of facts to support their claim that would show an

entitlement to relief. *Springdale Educ. Ass'n v. Springdale Sch. Dist.*, 133 F.3d 649, 651 (8th Cir. 1998)(citing *Minnesota ex. rel. Hatch v. Fleet Mortg. Corp.* 158 F.Supp.2d 962, 966 (D. Minn. 2001)). Defendant has failed to satisfy this standard and, accordingly, its motion to dismiss must be denied.

## II. Plaintiff's Promissory Estoppel Claim Arises from Factually Distinct Violations Resulting in Recognizable Injuries

The Minnesota Supreme Court has interpreted the exclusivity provision to be a bar to causes of action "relating to the same allegedly discriminatory practice and predicated on identical factual statements and alleging the same injury or damages." *Hoover v. Norwest Private Mortg. Banking*, 605 N.W.2d 757, 767 (Minn. Ct. App. 2000) (citing *Williams v. St. Paul Ramsey Med. Ctr., Inc.*, 551 N.W.2d 483, 485 (Minn. 1996)).

### a. *The Standard for MHRA Preemption*

As noted in *Klaahsen v. APCOA/Standard Parking, Inc.*, 2002 WL 1397041 (D. Minn. June 26, 2002), "[t]he decisions of this Court on the issue of MHRA preemption are not consistent." The most recent formulation of a standard for MHRA preemption, also used by Defendant, is as follows:

> The MHRA preempts a common law cause of action if (1) the factual basis and injuries supporting the common law claim also would establish a violation of the MHRA, and (2) the obligations the defendant owes to the plaintiff, as a practical matter, are the same under both the common law and the MHRA.

*Pierce v. Rainbow Foods Group, Inc.*, 158 F. Supp. 2d 969, 975-76 (D. Minn. 2001). This test has been criticized by the Court for two reasons. As noted in *Klaahasen*, "The first part of this standard is derived from *Williams*, a case involving the application of

Minnesota's rules of statutory construction and resulting in the preemption of a statutory claim." 2002 WL 1397041 at *23 (citing W*illiams v. St. Paul Ramsey Med. Ctr., Inc.*, 551 N.W.2d 483, 485 (Minn. 1996)). Likewise, Plaintiff's common law claims must proceed because "*Pierce* does not . . . reconcile *Williams* with *Vaughn* and *Wirig*, cases that have plainly held that a plaintiff may maintain a common-law cause of action that is factually parallel to an MHRA claim." *Id.* (citing *Vaughn v. Northwest Airlines, Inc.*, 558 N.W.2d 736, 745 (Minn. 1997)); *See also Wirig v. Kinney Shoe Corp.*, 461 N.W.2d 374, 379 (Minn. 1990).

**b. *Plaintiff's Promissory Estoppel Claim Imposes a Distinct Duty on Defendant***

Even if the Court applies the test as formulated in *Pierce*, Plaintiff's common law claim of promissory estoppel must proceed because the obligations or 'duties' that Defendant owes Plaintiff under common law are independent of the duties imposed on Defendant by the MHRA. These duties arise from factually distinct violations resulting in recognizable injuries. Here, the MHRA imposes a duty on Defendant to take all reasonable steps to prevent the discrimination based on Plaintiff's race from occurring. The duty imposed by the common law claim of promissory estoppel requires Defendant to fulfill its promises made to Plaintiff to avoid the injustice that Plaintiff will suffer if Defendant's promise is not enforced. Plaintiff even took a demotion and forwent other job opportunities with the company based on these representations. The injury associated with Plaintiff's MHRA claim is failure to promote based on Plaintiff's race, whereas the

injury associated with Plaintiff's promissory estoppel claim is detrimental, good-faith, reliance on Defendant's promises. These two injuries are factually distinct.

### c. *Promissory Estoppel Claims Are Not Expressly Abrogated by the MHRA*

Nothing in the exclusivity provision of the MHRA expressly abrogates common law promissory estoppel claims. *See e.g. Wirig* 461 N.W.2d at 377-378, (Minn. 1990)(finding that the MHRA does not abrogate common law battery). Indeed, Courts in this state have noted further that, "We have long followed the presumption that statutory law is consistent with common law." *In re Shetsky*, 60 N.W.2d 40, 45 (Minn. 1953). Thus, "[i]f statutory enactment is to abrogate common law, the abrogation must be by express wording or necessary implication." *Id.* Here, we have no cases that expressly abrogate promissory estoppel, thus Plaintiff must be permitted to pursue his claims in their entirety.

## III. Plaintiff's Complaint Alleges a Continuing Violation and Is Not Time-Barred

Plaintiff alleges that his claims arise out of a pattern of discrimination that began in August 2009 and culminated in October 2012, when he realized that Michals would not be fulfilling his promises. Throughout this relevant time period, Plaintiff was continually discriminated against by means of Defendant's repeated failure to promote him as promised. Accepting Plaintiff's factual allegations as true, Plaintiff has stated claims for continuing violations of the MHRA and common law, rather than separate claims for a number of "discrete acts" as Defendant suggests. Thus, the statute of limitations did not begin to run until Plaintiff understood that Michals would not ever be making good on his specific and repeated promises in October 2012.

**a. *The Continuing Violation Standard***

Continuing violations occur when "the discriminatory acts of an employer over a period of time indicate a systematic repetition of the same policy and constitute a sufficiently integrated pattern to form, in effect, a single discriminatory act." *Hubbard v. United Press Int'l. Inc.*, 330 N.W.2d 428, 440-41 n. 11 (Minn. 1983). "To establish a continuing violation, a plaintiff must show that at least one incident . . . occurred within the limitations period." *Giuliani v. Stuart Corp.*, 512 N.W.2d 589, 595 (Minn. Ct. App. 1994). Minnesota Courts have recognized that where a continuing violation is established, the statute of limitations encompasses acts occurring outside the limitations period as well as incidents within the period. *Sigurdson v. Isanti Cnty.*, 448 N.W.2d 62, 67 (Minn. 1989); *Kohn v. City of Minneapolis Fire Dept.*, 583 N.W.2d 7 (Minn. Ct. App. 1998) (recognizing that department's failure to promote Hispanic firefighter 17 times were "continuing violations," extending time of commencement of statute of limitations until last denial of promotion).

Determining what constitutes a continuing violation, as opposed to multiple individual discrete acts, is not always easy and the courts have been less than clear in formulating a standard of review. The Fifth Circuit Court of Appeals, however, has articulated a useful analytical framework for addressing this issue. In *Berry v. Board of Supervisors*, 715 F.2d 971, 981 (5th Cir. 1983), the Fifth Circuit identified three factors to be considered in determining whether the continuing violation doctrine should apply: (1) subject matter (are the acts the same type of discrimination?); (2) frequency (are there recurring or isolated, discrete actions?); and (3) permanence (was there some degree of

finality about an action that should have prompted the employee to assert his or her rights?). *Id.* at 981. The most weight is given to the third factor. *Id*. The *Berry* test has been applied, though not explicitly adopted, by Minnesota courts. *See Bradley v. Hubbard Broad., Inc.,* 471 N.W.2d 670, 676 (Minn. Ct. App. 1991), *pet. for rev. denied* (Minn. Aug. 2, 1991) (applying the *Berry* test); *Mandy v. Minnesota Min. & Mfg. Co.,* 940 F.Supp 1463, 1468 (D. Minn. 1996) (same).

**b. *Plaintiff Alleges a Continuing Violation***

Applying the *Berry* test, Plaintiff has established an ongoing pattern of discrimination. During the time period in question, Plaintiff was repeatedly subjected to discrimination and led to believe that his partnership was right around the corner. The discriminatory actions were not isolated acts but were part of a concerted pattern of behavior instituted by his supervisor to effectively discriminate against him based on his protected status as a Hispanic male. Plaintiff was passed over for multiple partnership opportunities, yet was promised time and time again that he would be given the next partnership opportunity available in the Minneapolis – St. Paul metro area. Each time that Plaintiff was promised a location, Michals awarded the opportunity to a lesser qualified white employee. Defendant's discriminatory behavior toward Plaintiff began in August 2009 when Michals revoked Plaintiffs' partnership offer to facilitate Compton moving back to her hometown. Each time that a subsequent partnership opportunity came up, Michals promised Plaintiff that he would be offered the opportunity. Indeed, Michals assurances to Plaintiff were not limited to hollow promises. Michals actively thwarted Plaintiff's efforts to seek a partnership in locations outside both the Minneapolis

– St. Paul metro area and the state, promising him that his patience would be rewarded. These actions occurred over and over again in August 2009, September 2009, Summer 2010, May 2011, Summer 2012, and finally in October 2012.

Most importantly, under the *Berry* standard, there was no finality during this period which should have prompted Plaintiff to assert his rights. Only until Plaintiff confronted Michals in October 2012 was there a clear finality of action prompting Plaintiff to assert his rights. Prior to this point, Plaintiff repeatedly asked Defendant for clarification and assurance that he would be provided with the next partnership opportunity and was strung along. Given Plaintiff's longevity with the company and solid performance across all the positions, Plaintiff reasonably believed that he would be awarded the next partnership opportunity. Only after pressing Michals on the reason why he was denied the final partnership opportunity was the pattern of discrimination apparent to Plaintiff. *See also Hardin v. S.C. Johnson*, 167 F.3d 340, 344 (7th Cir. 1999) (holding continuing violation doctrine applies "[w]hen it would be unreasonable to expect the plaintiff to perceive offensive conduct as [discriminatory] before the limitations period runs, or [when] the earlier discrimination may only be recognized as actionable in light of 'events that occurred later, within the period of the statute of limitations,'" or "when, after an initial incident of discrimination, a plaintiff does not feel 'sufficient distress to. . . mak[e] a federal case'").

Finally in October 2012, Plaintiff discovered Defendant's pattern of discrimination and hollow promises. With further discovery, the facts as alleged will further show that throughout this time, Plaintiff continually asked about his employment status and

inquired into the availability of a partnership. All the while, Plaintiff was repeatedly promised a partnership and continually discriminated against through Defendant's failure to promote him.

**c. *Even if Defendant's Actions Fall Outside the Statute of Limitations, the Statute of Limitations Should be Equitably Tolled in Plaintiff's Favor***

Finally, even if actions relating to Defendant's failure to promote Plaintiff in respect to his claims of discrimination fall outside the limitations period, the statute of limitations should be equitably tolled in his favor because the nature of that discrimination did not solidify until October 2012, when Plaintiff pressed Michals regarding the reason why he was not offered the Coon Rapids, MN partnership. *See Morgan v. Nat'l R.R. Passenger Corp.,* 536 U.S. 101,113 (2002) (time for filing claim is subject to both equitable tolling and estoppel).

Equitable tolling does not require any conduct on the part of the Defendant to mislead Plaintiff. *Dring v. McDonnell Douglas Corp.*, 58 F.3d 1323, 1328 (8th Cir. 1995); *Bailey v. Glover*, 88 U.S. 342 (1875); *Holmberg v. Armbrecht*, 327 U.S. 392 (1946). Its sole focus is on Plaintiff's equities. The question in applying this doctrine is when a reasonable person in the plaintiff's position should have been aware that his or her rights have been violated. *Id.* at 1329; (*citing Henderson v. Ford Motor Co.*, 403 F.3d 1026, 1033 (8th Cir. 2005). Excusable ignorance, on the part of the plaintiff, can provide a basis for equitable tolling. *Dring* 58 F.3d at 1329.

Here, it was not unreasonable for Plaintiff to hold out until October 2012 because, based on his experience, performance history, and promises made, he expected that

would be offered a partnership if he continued to work hard and had enough patience. As such, the statute of limitations should be equitably tolled in Plaintiff's favor even if the Court finds that some of Defendant's acts were outside the MHRA's one-year window.

**d. *Even If the Court Finds there Is No Continuing Violation, Plaintiff May Nevertheless Introduce Evidence Outside the Limitations Period to Support His MHRA Claim***

Regardless of whether this Court ultimately concludes that Plaintiff has alleged an ongoing violation such that all acts by Defendant leading up to Plaintiff's termination are actionable or instead concludes that Plaintiff is entitled only to recover damages for his most recent claim of discrimination, the damage calculation is the same. Accordingly, Plaintiff is not precluded by the MHRA's statute of limitations from introducing evidence of conduct outside the limitations period to support his discrimination claims. *See Mems v. City of St. Paul, Dep't of Fire & Safety Servs.*, 327 F.3d 771, 783 (8th Cir. 2002) (approving jury instruction directing that while plaintiff could only recover damages for unlawful acts occurring with the limitations period, jury could consider evidence of acts occurring outside the period to establish relevant background information).

## CONCLUSION

For all of the above reasons, Defendant's Partial Motion to Dismiss must be denied in its entirety.

Dated: August 21, 2013

HALUNEN & ASSOCIATES

/s/Ross D. Stadheim

Clayton Halunen, (#219721)
Ross D. Stadheim, (#0392475)
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099

*ATTORNEYS FOR PLAINTIFF*