## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Lorenzo Tejeda,<br><br>　　　　Plaintiff,<br><br>v.<br><br>OS Restaurant Services, LLC,<br><br>　　　　Defendant. | Case No. 13-cv-1966 (SRN/FLN)<br><br><br>**MEMORANDUM OPINION<br>AND ORDER** |

Clayton D. Halunen, Ross D. Stadheim, and Michelle Dye Neumann, Halunen & Associates, 1650 IDS Center, 80 South Eighth Street, Suite 1650, Minneapolis, Minnesota 55402, for Plaintiff.

Joseph G. Schmitt, Nilan Johnson Lewis PA, 120 South Sixth Street, Suite 400, Minneapolis, Minnesota 55402; Kevin David Johnson, Marquis W. Heilig, and Whitney M. Buescher, Thompson Sizemore Gonzalez & Hearing PA, 201 North Franklin Street, Suite 1600, Tampa, Florida 33602, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

## I.    INTRODUCTION

This matter is before the Court on Defendant OS Restaurant Services, LLC's Partial Motion to Dismiss [Doc. No. 10].  For the reasons set forth below, the Court denies Defendant's motion.

## II.    BACKGROUND

Plaintiff Lorenzo Tejeda is a Hispanic male and Minnesota resident.  (Compl. ¶ 1 [Doc. No. 1-1].)  Defendant OS Restaurant Services, LLC ("Outback Steakhouse") is

1

incorporated under Delaware state law, headquartered in Florida, and conducts business in Minnesota. (<u>Id.</u> ¶ 2.)  Plaintiff is a current employee of Defendant, for which he has worked since 2000. (<u>Id.</u> ¶ 6; Mem. of Law in Supp. of Def.'s Partial Mot. to Dismiss at 2 [Doc. No. 12].)

The facts are alleged as follows.  Plaintiff began his employment with Defendant as a cook at its location in San Antonio, Texas. (Compl. ¶ 6.)  In January 2002, Plaintiff relocated to Minnesota and worked as a cook at the Outback Steakhouse in Bloomington, Minnesota. (<u>Id.</u> at ¶ 7.)  In August 2003, Plaintiff was promoted to kitchen manager at the Maplewood, Minnesota location. (<u>Id.</u> ¶ 8.)  In March 2009, Defendant's Joint Venture Partner, Greg Michals, promoted Plaintiff to partner of the Eau Claire, Wisconsin location. (<u>Id.</u>)  In August 2009, Defendant's location in Eau Claire closed, eliminating Plaintiff's position. (<u>Id.</u>)

After the Outback Steakhouse in Eau Claire closed, Mr. Michals offered Plaintiff a partnership at the Madison, Wisconsin location, and Plaintiff accepted the offer. (<u>Id.</u> ¶ 9.)  Two days after Plaintiff's acceptance, Mr. Michals rescinded the offer, telling Plaintiff that he already had promised that location to Kelley Compton. (<u>Id.</u>)  Mr. Michals apologized to Plaintiff and told him to be patient because he would make him a partner again soon. (<u>Id.</u>)

Plaintiff then moved back to Minnesota, and Mr. Michals asked him to be the interim partner at the Outback Steakhouse in Coon Rapids, Minnesota. (<u>Id.</u> ¶ 10.)  Two weeks into the job, Plaintiff asked Mr. Michals if the partnership was permanent. (<u>Id.</u>)  Mr. Michals told Plaintiff to stand by because he did not know yet. (<u>Id.</u>)  In September 2009, Mr. Michals revoked Plaintiff's partnership at the Coon Rapids location. (<u>Id.</u> ¶ 11.)  Plaintiff's

position went to Chris French, a recently displaced partner of Defendant when the Outback Steakhouse in Eden Prairie, Minnesota closed. (Id.)

Plaintiff expressed his dissatisfaction that Mr. French received priority over him. (Id. ¶ 12.) Mr. Michals agreed and reassured Plaintiff that "the next store in the Twin Cities that opens up, besides Bloomington, is yours if you let me take care of Chris French first." (Id.) Plaintiff and Mr. Michals discussed numerous "what if" scenarios, all of which resulted in Plaintiff becoming a partner. (Id. ¶ 13.) Mr. Michals asked Plaintiff to accept a pay cut from $60,000 to $45,000 to manage the front of the house at the Roseville, Minnesota location because he would become a partner soon. (Id.) Based on Mr. Michals' promise that Plaintiff would receive the next partnership in the area, Plaintiff agreed. (Id.) Plaintiff then moved to Inver Grove Heights, Minnesota, because from there he could easily and conveniently manage any location that became available in the Minneapolis-St. Paul metropolitan area. (Id.)

In the summer of 2010, Diane Kenney, a former partner in Minnesota and current Joint Venture Partner for Colorado, Wyoming, and South Dakota, visited the Roseville, Minnesota location. (Id. ¶ 14.) Ms. Kenney asked Plaintiff why he was not a partner, and Plaintiff responded that he was promised the next location in the Minneapolis-St. Paul metropolitan area. (Id.) Ms. Kenney asked Plaintiff if he was interested in moving to Colorado to be a partner there. (Id.) Plaintiff expressed his strong interest. (Id.) Ms. Kenney stated that she needed the approval of Mr. Michals, and Plaintiff agreed. (Id.)

Mr. Michals addressed Ms. Kenney's proposal with Plaintiff and asked why Plaintiff was interested in moving to Colorado. (Id. ¶ 15.) Plaintiff replied that "Colorado is a nice

state and I'd finally be managing my own location." (<u>Id.</u>)  Mr. Michals stated that he "had

plans" for Plaintiff in Minneapolis-St. Paul, and there would soon be an opportunity for

Plaintiff because one of the partners would be terminated soon. (<u>Id.</u>)  Plaintiff knew that

Mr. Michals was referring to a partner at the Woodbury, Minnesota location. (<u>Id.</u>)  Based

on Mr. Michals' representation, Plaintiff decided not to pursue the partnership opportunity

in Colorado. (<u>Id.</u>)

      In May 2011, Plaintiff received an email notification that the partnership at

Defendant's Rochester, Minnesota location was available. (<u>Id.</u> ¶ 16.)  Mr. Michals

approached Plaintiff to ensure that he was not applying for the position, repeated his plans

for Plaintiff in the Minneapolis-St. Paul metropolitan area, and stated that he had promised

the Rochester, Minnesota location to someone else. (<u>Id.</u>)  Plaintiff reminded Mr. Michals of

their arrangement and his patience, which Mr. Michals acknowledged. (<u>Id.</u>)  Based on Mr.

Michals' assurances, Plaintiff moved from Inver Grove Heights to Cottage Grove,

Minnesota, where he purchased a home. (<u>Id.</u>)

      In September 2012, Mr. Michals asked Plaintiff if he would work as the front house

manager at the Bloomington, Minnesota location—a position then held by Mike Burley.

(<u>Id.</u> ¶ 17.)  Plaintiff rejected this position because he knew this position well, having been a

front house manager for two years. (<u>Id.</u>)  Plaintiff repeated that he wanted to wait for the

next partnership position. (<u>Id.</u>)

      In October 2012, a partnership position opened up in Coon Rapids, Minnesota. (<u>Id.</u> ¶

18.)  Plaintiff knew that Mr. Burley would be interviewing for the position, and that Mr.

Michals previously promised Mr. Burley a partnership as well. (<u>Id.</u>)  Plaintiff suspected that

Mr. Michals wanted to give the partnership to Mr. Burley and have Plaintiff fill Mr.

Burley's position.  (Id.)

Plaintiff interviewed with Mr. Michals for the position, after which he had a phone

interview with Bob Irons, Joint Venture Partner for Illinois.  (Id. ¶ 19.)  After his interviews,

Mr. Michals informed Plaintiff that he did not get the job.  (Id. ¶ 20.)  Plaintiff was shocked

and stated, "Greg, you promised me.  We had a deal."  (Id.)  Mr. Michals replied, "Lorenzo,

you could have gone anywhere."  (Id.)  Mr. Michals also stated that Plaintiff did not get the

job because he was "in the kitchen too long."  (Id.)  Plaintiff pressed Mr. Michals for a

better explanation, but Mr. Michals did not provide an alternative reason.  (Id. ¶ 21.)  Mr.

Mr. Michals ended the conversation with "go ahead and quit, I don't care."  (Id.)

On July 22, 2013, Plaintiff filed a Complaint in this Court, alleging claims of

discrimination in violation of the Minnesota Human Rights Act (Count 1); promissory

estoppel (Count 2); false statements as inducement to entering employment in violation of

Minnesota Statute § 181.64 (Count 3); and fraudulent inducement (Count 4).  (Compl. ¶¶

25-48.)  On July 29, 2013, Defendant filed a partial motion to dismiss, seeking to dismiss

Count 2, portions of Count 1 that allege claims arising more than one year before service of

the Complaint, and portions of Count 4 that allege claims arising more than two years

before service of the Complaint.  (Def.'s Partial Mot. to Dismiss [Doc. No. 10].)  On August

21, 2013, Plaintiff filed an opposition brief.  (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss

[Doc. No. 17].)  On September 4, 2013, Defendant filed a reply (Reply Mem. in Supp. of

Def.'s Partial Mot. to Dismiss [Doc. No. 20].)  On October 3, 2013, the Court held a hearing

on this matter.  (Court Mins. [Doc. No. 24].)

## III.    DISCUSSION

Defendant moves to dismiss parts of Plaintiff's Complaint for failure to state a claim for which relief can be granted under Federal Rule of Civil Procedure 12(b)(6).

### A.  Standard of Review

When evaluating a motion to dismiss under Rule 12(b)(6), the Court assumes the facts in the Complaint to be true and construes all reasonable inferences from those facts in the light most favorable to the plaintiff.  Morton v. Becker, 793 F.2d 185, 187 (8th Cir. 1986).  The Court, however, need not accept as true wholly conclusory allegations, Hanten v. Sch. Dist. of Riverview Gardens, 183 F.3d 799, 805 (8th Cir. 1999), or legal conclusions that the plaintiff draws from the facts pled.  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

When considering a motion to dismiss, the Court ordinarily does not consider matters outside the pleadings.  See FED. R. CIV. P. 12(d).  But the Court may consider exhibits attached to the complaint and documents that are necessarily embraced by the pleadings.  Mattes v. ABC Plastics, Inc., 323 F.3d 695, 698 n.4 (8th Cir. 2003).  The Court may also consider public records.  Levy v. Ohl, 477 F.3d 988, 991 (8th Cir. 2007).

To survive a motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007).  Although a complaint need not contain "detailed factual allegations," it must contain facts with enough specificity "to raise a right to relief above the speculative level."  Id. at 555.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," will not pass muster under Twombly.  Ashcroft v. Iqbal, 556 U.S.

662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 555).  In short, this standard "calls for enough

fact to raise a reasonable expectation that discovery will reveal evidence of [the claim]."

<u>Twombly,</u> 550 U.S. at 556.

### B.  Preemption under the Minnesota Human Rights Act

The MHRA is the exclusive remedy for acts declared actionable by this Act.  <u>See</u>

MINN. STAT. § 363A.04.[1]  This Court's decisions on the issue of MHRA preemption are not

entirely consistent, but it is generally recognized that the MHRA preempts a common law

cause of action if: (1) the factual basis and injuries supporting the common law claim also

would establish a violation of the MHRA, and (2) the obligations the defendant owes to the

plaintiff, as a practical matter, are the same under both the common law and the MHRA.

<u>Pierce v. Rainbow Foods Group, Inc.</u>, 158 F. Supp. 2d 969, 975-76 (D. Minn. 2001).

Defendant claims that Plaintiff's common law claim of promissory estoppel is

subject to preemption under the MHRA, arguing that the facts and injuries of Count 1 and

Count 2 are identical, as are Defendant's obligations under both counts.  (Mem. of Law in

Supp. of Def.'s Partial Mot. to Dismiss at 5-6 [Doc. No. 12].)  Plaintiff responds that he can

maintain a common law cause of action that is factually parallel to an MHRA claim, where

---

[1] Minn. Stat. § 363A.04 states:

> The provisions of this chapter shall be construed liberally for the
> accomplishment of the purposes thereof.  Nothing contained in this chapter
> shall be deemed to repeal any of the provisions of the civil rights law or of
> any other law of this state relating to discrimination because of race, creed,
> color, religion, sex, age, disability, marital status, status with regard to
> public assistance, national origin, sexual orientation, or familial status; but,
> as to acts declared unfair by sections 363A.08 to 363A.19, and 363A.28,
> subdivision 10, the procedure herein provided shall, while pending, be
> exclusive.

the duties imposed by the common law claim and the MHRA are different.  (Pl.'s Mem. in Opp'n to Def.'s Mot. to Dismiss at 8-9 [Doc. No. 17].)

The Court agrees with Plaintiff.  When applying state law, a federal court is bound by decisions of the state's highest court.  <u>David v. Tanksley</u>, 218 F.3d 928, 930 (8th Cir. 2000).  In <u>Wirig v. Kinney Shoe Corp.</u>, 461 N.W.2d 374 (Minn. 1990), the Minnesota Supreme Court held that a sexual harassment action brought under the MHRA does not bar a parallel action for common law battery.  461 N.W.2d at 379.  And in <u>Vaughn v. Nw. Airlines</u>, 558 N.W.2d 736 (Minn. 1997), the Minnesota Supreme Court held that the plaintiff's common law negligence claim was not preempted by the MHRA, despite the defendant's assertion that the plaintiff did not allege separate facts to support the negligence claim.  558 N.W.2d at 744-45.  Under this controlling precedent, Defendant's argument— that Plaintiff's common law promissory estoppel claim is preempted because he based it on the same set of facts as those underlying the MHRA claim—is unavailing.

Importantly, Defendant's obligations to Plaintiff are not the same in a claim for promissory estoppel and a claim for race discrimination under the MHRA.  The doctrine of promissory estoppel implies a contract in law where none exists in fact.  <u>City of Geneseo v. Util. Plus</u>, 533 F.3d 608, 617 (8th Cir. 2008).  It requires the following proof: (1) a clear and definite promise; (2) that the promisor intended to induce reliance and such reliance occurred; and (3) that the promise must be enforced to prevent injustice.  <u>Id.</u>  A claim of promissory estoppel does not share any elements of proof with a claim of race discrimination under the MHRA, the latter of which requires Plaintiff to show that: (1) he was a member of a protected group; (2) he was meeting the legitimate expectations of his

employer; (3) he suffered an adverse employment action; and (4) similarly situated employees who were not members of the protected group were treated differently. <u>Clark v. Runyon</u>, 218 F.3d 915, 918 (8th Cir. 2000). Indeed, an employer's duty not to discriminate on the basis of race is very distinct from his duty to prevent harm resulting from reasonable and detrimental reliance on a clear and definite promise. Given the discrete elements and employer obligations under these two types of claims, the Court concludes that the MHRA's exclusivity provision does not preempt Plaintiff's promissory estoppel claim as a matter of law.

### C. Statute of Limitations

Defendant argues that Plaintiff's race discrimination, promissory estoppel, and fraudulent inducement claims (Counts 1, 2, and 4) are based in part on discrete acts that are time-barred. (Mem. of Law in Supp. of Def.'s Partial Mot. to Dismiss at 6-7 [Doc. No. 12].) Specifically, Defendant views as discrete acts the failures to promote Plaintiff to partnership positions in (1) Madison, Wisconsin around August 2009, and (2) Coon Rapids, Minnesota in September 2009. (<u>Id.</u> at 6.) Defendant notes that the MHRA has a one-year statute of limitations for a race-discrimination claim, MINN. STAT. § 363A.28(3), and a two-year statute of limitations for the recovery of wages, overtime, damages, fees, or penalties. MINN. STAT. § 541.07(5).

Plaintiff responds that his claims are not based on discrete acts, but rather on a continuing violation—a continuing failure by Mr. Michals to honor his promise—that began in August 2009 and culminated in October 2012, when Plaintiff realized for the first time that Defendant would not be fulfilling its promises to promote him. (Pl.'s Mem. in Opp'n to

Def.'s Mot. to Dismiss at 10-14 [Doc. No. 17].)  In the alternative, Plaintiff argues that even if Defendant's actions fall outside the statute of limitations, equitable tolling should apply. (Id. at 14-15.)

### 1.  Continuing Violation

The continuing violation doctrine tolls the statute of limitations "where a continuing pattern forms due to discriminatory acts occurring over a period of time, as long as at least one incident of discrimination occurred within the limitations period." Treanor v. MCI Telecomms. Corp., 200 F.3d 570, 573 (8th Cir. 2000).  This doctrine is available when "the unlawful employment practice manifests itself over time, rather than as a series of discrete acts." Id. (citing Giuliani v. Stuart Corp., 512 N.W.2d 589, 595 (Minn. Ct. App. 1994)). Typically, the continuing violation doctrine applies to hostile work environment claims, where the discriminatory practice may consist of many acts that occur "over a series of days or perhaps years." Nat'l R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 115 (2002).  In direct contrast to discrete acts, "a single act of harassment may not be actionable on its own." Id.  Termination, failure to promote, denial of transfer, and refusal to hire are examples of discrete acts.  Id. at 114.  Discrete acts are "not actionable if time barred, even when they are related to acts alleged in timely filed charges." Id. at 113; see Tademe v. Saint Cloud State Univ., 328 F.3d 982, 987 (8th Cir. 2003).

Under Morgan, the Court concludes that Plaintiff's race discrimination, promissory estoppel, and fraudulent inducement claims are in part barred by the one- and two-year statutes of limitation under Minn. Stat. §§ 363A.28(3) and 541.07(5).  Defendant's decision to revoke its partnership offer to Plaintiff for the Madison, Wisconsin location around

August 2009 was a discrete act that constituted its own employment practice.  The same

applies to Defendant's decision to revoke Plaintiff's interim partnership at the Coon Rapids,

Minnesota location in September 2009.  Morgan teaches that failures to promote are

generally considered separate violations.  536 U.S. at 111 ("There is simply no indication

that the term 'practice' converts related discrete acts into a single unlawful practice for the

purpose of timely filing.").  Thus, the one- and two-year statutes of limitations on Plaintiff's

claims, which are based on Defendant's alleged failures to promote him, began to run in

August 2009 when Defendant denied Plaintiff the promotion in the Madison, Wisconsin

location.  To the extent that Plaintiff bases Counts 1, 2, and 4 on the alleged incidents in

August 2009 and September 2009, his claims are time-barred.  Plaintiff, however, may use

these prior acts as background evidence in support of a timely claim.  See id. at 113.

### 2. Equitable Doctrines

Next, the Court considers whether an equitable doctrine applies to toll the applicable

statutes of limitations.  Plaintiff urges the Court to apply the doctrine of equitable tolling

because "based on his experience, performance history, and promises made," it was not

unreasonable for Plaintiff to wait several years to pursue his claims.  (Pl.'s Mem. in Opp'n

to Def.'s Mot. to Dismiss at 14-15 [Doc. No. 17].)  Defendant responds that Plaintiff has not

met his burden to show that equitable tolling is appropriate.  (Reply Mem. in Supp. of Def.'s

Partial Mot. to Dismiss at 7-9 [Doc. No. 20].)

The equitable doctrines that toll a statute of limitations are that of waiver, estoppel,

and tolling.  Morgan, 536 U.S. at 121; Devin v. Schwan's Home Servs., Inc., No. 04-4555

(RKH/AJB), 2005 WL 1323919, at *7 (D. Minn. May 20, 2005).  The doctrines of waiver

11

and estoppel focus on the actions of the defendant. <u>Devin</u>, 2005 WL 1323919, at *7.

Waiver, which is not at issue here, is where the defendant voluntarily relinquishes or

abandons the right to the defense based on the running of the statute of limitations. <u>Id.</u>

Equitable estoppel applies when "the employee's failure to file in timely fashion is the

consequence of either a deliberate design by the employer or of actions that the employer

should unmistakably have understood would cause the employee to delay filing his charge."

<u>Dring v. McDonnell Douglas Corp.</u>, 58 F.3d 1323, 1329 (8th Cir. 1995).

Equitable tolling, in contrast, focuses on the plaintiff's ignorance of a claim, not on

any possible misconduct by the employer. <u>Henderson v. Ford Motor Co.</u>, 403 F.3d 1026,

1033 (8th Cir. 2005). This doctrine tolls the limitations period when the plaintiff, "despite

all due diligence, is unable to obtain vital information bearing on the existence of his claim."

<u>Id.</u> In other words, the question for equitable tolling is "whether a reasonable person in the

plaintiff's position would have been aware" that his rights had been violated. <u>Id.</u> The

requirements for equitable tolling are: (1) timely notice to the defendant; (2) no prejudice to

the defendant; and (3) reasonable and good-faith conduct on the plaintiff's part. <u>Devin</u>,

2005 WL 1323919, at *8.

Courts have justified equitable tolling in the discrimination context when an

administrative agency misled a complainant, particularly one without counsel. <u>See, e.g.</u>,

<u>Lawrence v. Cooper Cmtys., Inc.</u>, 132 F.3d 447 (8th Cir. 1998) (permitting equitable tolling

because the EEOC led the claimant to believe that submitting an Intake Questionnaire

within fifteen days of the expiration of the filing deadline, with subsequent verification,

would suffice as a Charge); <u>Schlueter v. Anheuser-Busch, Inc.</u>, 132 F.3d 455 (8th Cir. 1998)

(permitting equitable tolling because the EEOC mistakenly gave the claimant the wrong form, used the wrong date to calculate when the 300-day filing period would expire, and led the claimant to believe that she had done everything necessary to file a charge); Anderson v. Unisys Corp., 47 F.3d 302 (8th Cir. 1995) (applying equitable tolling because an agency led the claimant to believe the filing period with the EEOC was one year rather than the appropriate 300 days and because the claimant lacked counsel). Here, however, Plaintiff does not allege that an administrative agency misled him, and he has legal counsel.

If any equitable doctrine is to apply to this case, it is equitable estoppel. Plaintiff's allegations, taken as true for these purposes, illustrate Defendant's continued string of promises about Plaintiff's partnership opportunities. When Defendant rescinded Plaintiff's partnership offer at the Madison, Wisconsin location in August 2009, Mr. Michals told Plaintiff to be patient because he would make Plaintiff a partner again soon. (Compl. ¶ 9.) When Mr. Michals revoked Plaintiff's interim partnership at the Coon Rapids, Minnesota location in September 2009, he promised Plaintiff that "the next store in the Twin Cities that opens up, besides Bloomington, is yours if you let me take care of Chris French first." (Id. ¶¶ 11-12.) In 2010, when Plaintiff expressed interest in moving to Colorado to Mr. Michals for better partnership prospects, Mr. Michals informed Plaintiff that a partner in the Minneapolis-St. Paul metropolitan area would be terminated soon, creating an opportunity for Plaintiff. (Id. ¶ 15.) And in May 2011, when Mr. Michals approached Plaintiff to ensure that he was not applying for a partnership opening at the Rochester, Minnesota location, he repeated his plans for Plaintiff in the Minneapolis-St. Paul area. (Id. ¶ 16.) These actions by Defendant, if true, might easily cause Plaintiff not to file suit in a timely

manner.

Plaintiff has not alleged sufficient facts for this Court to find that he has adequately pled equitable tolling.  But he has alleged sufficient facts to adequately plead equitable estoppel.  Discovery is necessary to determine whether the claim of equitable estoppel will ultimately prevail.  Because the Complaint does not explicitly identify his equitable claim as one for estoppel, within thirty days of this Order's date, Plaintiff must file an amended complaint clarifying this claim as such to conform to the assertions and facts pled in the Complaint.  See FED. R. CIV. P. 15(a)(2) (stating that the Court should "freely give leave [to amend] when justice so requires").

## IV.    ORDER

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT:**

1.  Defendant's Partial Motion to Dismiss [Doc. No. 10] is **GRANTED** as to Plaintiff's reliance on the continuing violation doctrine and equitable tolling, and is **DENIED** as to equitable estoppel.

Dated:        January 24, 2014                    s/ Susan Richard Nelson
                                                  SUSAN RICHARD NELSON
                                                  United States District Court Judge